**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**STEPHEN ELLIOTT POWERS**                                          **PLAINTIFF**

**v.**                                                    **No. 4:10CV57-P-A**

**CHRISTOPHER EPPS, ET AL.**                                       **DEFENDANTS**

**REPORT AND RECOMMENDATION**

On August 19, 2010, plaintiff Stephen Elliott Powers, an inmate in the custody of the Mississippi State Penitentiary with inmate number K5020, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed under 42 U.S.C. § 1983. A plaintiff's claim will be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1]

**Allegations[2]**

The plaintiff, Stephen Elliott Powers, claims that he began having stroke symptoms on February 28, 2006, but he did not receive treatment for stroke until March 7, 2006. Powers complained that his head was hurting to Corrections Officer Miller during her rounds. Powers was confused and disoriented with blurry vision during Miller's routine count. Miller escorted

---

[1] 28 U.S.C. § 1915(g).

[2] The plaintiff in this case has suffered multiple strokes which have impaired his movements, vision, memory, and speech. As such, his memory of the events leading up to his diagnosis and later treatment for stroke are imprecise. The court has relied in part on the medical records the Mississippi Department of Corrections provided for the *Spears* hearing.

Powers to the Unit 32 clinic, where he was seen by a medical staff member. He was returned to in Unit 32-C after the medical staff member decided that there was nothing wrong with him. Powers went into convulsions and fell unconscious in the Unit 32 Administration Building visiting room.

On February 28, 2006, Powers complained to medical staff that the previous night he had experienced a headache that left him dizzy and lightheaded. The plaintiff was quiet and cooperative during the visit, but was "unable to confirm why he was brought to the clinic." By March 7, 2006, the plaintiff's condition had deteriorated tremendously; he "suddenly became confused/disoriented." On March 8, 2006, a staff member noted in Powers' record that during a visit with his mother over the weekend, Powers "did not recognize her." Only after he was referred to a psychiatrist (who determined that Powers was not malingering) was there an entry (on March 8, 2006) in his record seeming to recognize that Powers was in grave danger: "[Inmate] may have acute intracranial process organic that needs urgent evaluation."

He was taken to the Unit 32 Clinic, then the Unit 42 Hospital, then again to the Greenwood/LeFlore Hospital, where an MRI and CAT scan were performed. Powers returned to the prison hospital, then was rushed to the University Medical Center ("UMC") in Jackson, Mississippi. Examinations at UMC revealed that Powers had suffered a massive stroke – and had an inoperable, deeply-embedded aneurism in his brain. Powers remained hospitalized for several months. He has suffered other strokes in the years after this incident, leaving him with speech disorders, weakened leg muscles, pain and numbness in his legs, loss of memory, and mental confusion.

Powers believes that more decisive action by the staff member who initially examined him and determined (incorrectly) that nothing was wrong would have led to a better outcome and could have prevented the damage from the first stroke, as well as the later strokes. The name of this medical staff member is not clear from the medical record. It appears from the medical record that, although Powers was examined multiple times after February 28, 2006, he was not actually diagnosed and treated for stroke until March 7, 2006. Indeed, at least one entry shows that Powers was referred for psychiatric care because staff thought he might be malingering. Powers also argues that his treatment for later strokes and the aneurism was insufficient and improper.

## Discussion

For a plaintiff to state a viable cause of action pursuant to § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). In this case, the plaintiff alleges that he merely sent a letters to Christopher Epps, Lawrence Kelly, and Dr. Gloria Perry complaining about his treatment. In addition, the plaintiff has not stated that defendants Deputy Warden John Rogers or Warden Timothy Morris had any involvement in this case. As these defendants had no personal involvement in the plaintiff's diagnosis or treatment, the undersigned respectfully recommends dismissal of the plaintiff's allegations against Christopher Epps, Lawrence Kelly, and Dr. Gloria Perry, Deputy Warden John Rogers, and Warden Timothy Morris for failure to state a constitutional claim.

The plaintiff's claims for denial of adequate medical care should, however, proceed against defendants Dr. John Evans, Dr. Thomas Lehman, Dr. Dominic Trinch, Dr. James Burke, Dr. John Payne, Dr. Kim Myung, Deputy Warden George Davenport, Dr. Heinz Schafer, and the University Medical Center.

**Handling of Objections, Acknowledgment of Receipt**

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted this 12th day of September, 2011.

/s/   S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE