IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

STEPHEN ELLIOTT POWERS                                              PLAINTIFF

v.                                                        No. 4:10CV57-GHD-RP

DR. JOHN EVANS, ET AL.                                            DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Stephen Elliott Powers, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to provide him with adequate medical care after he had a series of strokes in 2006. The defendants have moved for summary judgment, as has the plaintiff. The matter is ripe for resolution. For the reasons set forth below, the plaintiff's motion for summary judgment will be denied; the defendants' motion for summary judgment will be granted, and judgment will be entered in favor of the defendants in all respects.

### Factual Allegations

Stephen Elliott Powers an inmate at the Mississippi State Penitentiary at Parchman, alleges that on or about February 28, 2006, a correctional officer "noticed that he appeared confused and disoriented." Doc. 1 at 6; Doc. 19 at 1-2. He alleges that when he told the correctional officer that his head hurt and that his vision was blurred, she escorted him to a medical clinic at Unit 32 of the Mississippi State Penitentiary at Parchman. *Id.* Medical staff initially determined that there was

nothing wrong with Mr. Powers, and sent him back to his cell. *Id.* Medical staff at first believed Mr. Powers to be malingering. Doc. 19 at 2, 3. The next day, he went into convulsions and lost consciousness. *Id.* He was taken back to the clinic, then transferred to Unit 42 (Parchman's hospital unit), then to Greenwood Leflore Hospital. *Id.* Medical staff there conducted MRI and CAT scans, and Mr. Powers was transferred to the University of Mississippi Medical Center in Jackson. *Id.* at pp. 6-7. Doctors there ultimately determined that Powers had suffered a "massive stroke" and a brain aneurysm. Doc. 1 at 8.

The events giving rise to this suit took place on or about February 28, 2006 to March 7, 2006. Mr. Powers filed his complaint initiating this action on April 30, 2010. Doc. 1. In his complaint, he alleges that the defendants acted with deliberate indifference to his initial complaints and symptoms – and that that the delay in providing him medical treatment resulted in pain, suffering, and permanent impairment that could have been avoided with prompt medical attention. *Id.* at p. 8. He also alleges that the deliberate indifference in providing medical care continued for some time afterwards.

Following the *Spears* hearing in this matter, the parties entered into a Consent Order, which set forth certain requirements for Mr. Powers' medical care moving forward. Doc. 33. Mr. Powers later made several requests to have the Consent Order set aside. The court conducted a status hearing in July 2017, Doc. 70, after which the Magistrate Judge entered a Report and Recommendation, recommending that the Consent Order be terminated and that a summary judgment briefing schedule be set. Doc. 75 at 14. On February 8, 2019, the court entered an order adopting the Report and Recommendation of the magistrate judge, vacating the Consent Order, reinstating the case to the Court's active docket, and setting a deadline for dispositive motions. Doc. 78. The parties have each moved for summary judgment, and the matter is ripe for decision. Docs. 83, 84.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).

In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

### Initial Medical Care Mr. Powers Received

Based upon the evidence of record, eight days transpired between Mr. Powers' first complaints of symptoms until he received medical care for a stroke. Unfortunately, someone on the medical staff believed, incorrectly, that he was malingering – a belief that caused delay in Mr. Powers' treatment. Without doubt, more expedient treatment would have been optimal, though it appears unknowable, at this point, whether such treatment would have led to a better medical outcome.

### Subsequent Medical Care

At the February 2017 evidentiary hearing, the Defendant called Dr. Clayton Ramsue to provide expert testimony regarding Mr. Powers' medical history and care:

> Dr. [Ramsue] testified that in 2006 Mr. Powers suffered from an intracerebral hemorrhage (an event in which blood suddenly bursts into brain tissue). An intracerebral hemorrhage is a very serious, often fatal event that frequently leaves survivors with phantom pain and numbness, as Mr. Powers experiences. *According to Dr. Ramsue, 92% of patients who experience an intracerebral hemorrhage die within ten years. Mr. Powers is therefore one of the 8% of patients who have survived a decade after such a brain bleed.*
>
> . . .
>
> Dr. Ramsue stated that Mr. Powers has been released from the care of a neurologist, as he has reached the maximum level of recovery to be expected after such a serious brain event, and additional rehabilitation or other treatments would not lead to further improvement. However, if Mr. Powers' condition deteriorates – or if he experiences stroke-like symptoms – he will return to the neurologist for evaluation and treatment. After reviewing Mr. Powers' extensive medical records, Dr. Ramsue concluded that Mr. Powers has received adequate medical care during the effective dates of the Consent Order.

Magistrate Judge's Report and Recommendation, Doc. 75 at 7-8 (emphasis added). Thus, Mr. Powers has survived a massive stroke and brain bleed of the type that kills more than 90% of its victims within ten years.

Mr. Powers has presented no evidence to support his allegation that the delay in recognizing and treating his stroke resulted in substantial harm to him. *Mendoza*, 989 F. 2d at 195. The incorrect diagnosis (malingering) during the time he suffered the stroke sounds wholly in negligence, which does not rise to the level of a constitutional claim for deliberate indifference under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). Initially, the medical providers incorrectly believed that he was malingering and offered no treatment. However, once they realized that he had suffered an actual medical event, he was examined, treated, and transferred to ever more advanced medical facilities – eventually receiving treatment at the University Medical Center (perhaps the finest hospital in the state). He has not alleged that the medical providers bore him ill will or intentionally misdiagnosed him.

Mr. Powers has been treated for the stroke and resulting infirmities ever since. He testified at the 2017 hearing that he is seen by a nurse or doctor approximately every week, *id.*, p. 6, a fact supported by his extensive medical records. Doc. 74. The Magistrate Judge ultimately concluded that Mr. Powers received adequate medical care during the effective dates of the Consent Order. Doc. 75, at 9. The Magistrate Judge further concluded that Mr. Powers "has received frequent and timely medical treatment, adequate exercise (given his condition), and reasonably nutritious food. He has survived a very serious brain bleed for over ten years – when, on average, 11 of 12 people who suffer such an event perish during that time." *Id.*

Finally, Mr. Powers alleges that he has received inadequate treatment for the nerve pain he experiences as a result of the stroke and brain bleed. However, as the Magistrate Judge found, "Dr. Ramsue's testimony made clear that, in some cases, medical science can only provide partial relief. Doctors have prescribed several different medications to treat the nerve pain, but none has provided Mr. Powers total relief from nerve pain," and "it appears that he is one of the patients for whom total

relief may not be possible." Doc. 75 at 10. The court understands Mr. Powers' frustration with the initial finding of malingering, the disabilities he suffers as a result of the stroke, and the nerve pain that does not respond well to treatment. However, under the facts of this case, his claim for denial of adequate medical care must fail.

## Conclusion

For the reasons set forth above, the plaintiff's motion for summary judgment will be denied, and the defendants' motion for summary judgment will be granted. Judgment will be entered in favor of the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of March, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE